# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **RODERICK PRESS,** | * |
| Plaintiff | * |
| v. | *     CIVIL NO. JKB-17-1667 |
| **UNITED STATES OF AMERICA**, *et al.*, | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM**

Plaintiff Roderick Press brought this action against the United States of America (the "United States"), Knight Sky LLC ("Knight Sky"), and George Knizewski on June 19, 2017. (*See* Compl., ECF No. 1.) In his complaint, Plaintiff raised a claim of negligence against the United States, and a claim of tortious interference with prospective economic and business relations against Knight Sky and Mr. Knizewski (collectively, "the Knight Sky Defendants"). (*Id.* ¶¶ 44-66.) Both the United States and the Knight Sky Defendants brought motions to dismiss, Plaintiff has responded to both motions and Defendants have replied. Therefore, both motions are ripe for review. No hearing is necessary to resolve the matter. *See* Local Rule 105.6 (D. Md. 2016). Plaintiff's claim against the United States is partially barred by sovereign immunity, and he has failed to state a claim against the Knight Sky Defendants. Accordingly, his complaint will be dismissed in part by accompanying order.

## I. *Background*[1]

Plaintiff worked in information technology and security, and in 2006 he joined Knight Sky as a network engineer. (Compl. ¶¶ 10, 14.) Knight Sky is a Maryland company that contracted with the Federal Government. (*Id.* ¶ 14.) Knight Sky's employees had security clearances, and it would use the Joint Personnel Adjudication Verification System ("JPAS") to process security-related information. (*See id.* ¶ 16; *id.* p. 1 (defining "JPAS").) JPAS is an "electronic personnel database maintained by the Department of Defense [("DoD")] for the purpose of collecting reports touching on a person's ability to use and to handle classified information." (*Id.* ¶ 16.) When Plaintiff worked for Knight Sky, his security clearance was "tagged on JPAS for Knight Sky and Knight Sky served as a servicing entity for Plaintiff's security clearance on JPAS." (*Id.* ¶ 17.) The exact nature of this relationship is not entirely clear, but what matters is this: Knight Sky was allowed to "update Plaintiff's record during the service relationship." (*Id.*) That means that Knight Sky was able to post reports to JPAS that would affect Plaintiff's ability to handle classified information. In 2008 Plaintiff "terminated his business relationship" with Knight Sky. (*Id.* ¶ 18.) Plaintiff had helped manage Knight Sky's JPAS access, and before leaving in 2008 he "separated himself . . . from the JPAS system," such that "Knight Sky was no longer a servicing entity to Plaintiff's security clearance" and could not continue to update his record. (*Id.* ¶ 19.)

After leaving Knight Sky, Plaintiff "activated" Astraeos Technologies, Inc. ("Astraeos"), a corporation he had formed a decade earlier, and began bidding on government contracts and competing with Knight Sky. (*Id.* ¶ 20, 22.) He also took a new job at Northrop Grumman. (*Id.* ¶ 21.) In March 2009, Knight Sky's CEO, George Knizewski, attended a trade show and told

---

[1] The facts are recited here as alleged by Plaintiff, as this memorandum is evaluating a motion to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

2

attendees that they should not do business with Astraeos. (*Id.* ¶ 23.) In April 2009, Astraeos filed suit against the Knight Sky Defendants in Maryland state court, for defamation, tortious interference, and unfair competition. (*Id.* ¶ 24.) Knight Sky brought several counterclaims, and ultimately a judge granted both parties a directed verdict, finding that Astraeos' claims failed for lack of damages, and Knight Sky's for failure to "present sufficient evidence as to liability and damages." (*Id.* ¶ 25.) The verdict was upheld by the Maryland Court of Special Appeals in September 2010. (*Id.*)

On October 2010, one month after the Court of Special Appeals' decision and two years after Plaintiff had left Knight Sky, Knight Sky published a security incident report (the "Incident Report") on Plaintiff's JPAS account. (*Id.* ¶ 26.) This Incident Report contained nine accusations against Plaintiff, mostly regarding mishandling various sensitive data or inappropriately using various systems, all with the intent to harm Knight Sky financially. (*Id.*) Plaintiff maintains that the Incident Report "contained falsehoods" and that Knight Sky "did not have a valid [DoD] sponsored account to access JPAS [and] did not have ownership, managing, or service rights to initiate investigations on Plaintiff' [sic] security clearance." (*Id.* ¶ 27-28.)

As a result of Knight Sky's actions "a red flag was placed on Plaintiff's JPAS account." (Compl. ¶ 28.) The Plaintiff's use of passive voice in this particular allegation is troublesome, given the importance of this event to Plaintiff's claims against the United States, but when read in context, the allegation seems to be this: the substance of the Incident Report "flagged [Plaintiff's] top-secret security clearance" which resulted in a red flag appearing on his JPAS account. (*Id.*) In other words, it was Knight Sky's actions that resulted in a red flag appearing on Plaintiff's JPAS account.

Plaintiff discovered the Report in December 2010. (*Id.* ¶ 30.) The DoD[2] then "reassured Plaintiff that the Incident Report would be favorably adjudicated and removed from his JPAS account." (*Id.*) The Incident Report, however, was not removed from Plaintiff's JPAS account, and as a result Plaintiff lost a five year contract and his job at Northrop Grumman in 2011. (*Id.* ¶¶ 31-32.) For the next several years the DoD continued to make representations to Plaintiff in regards to the adjudication of the Incident Report and the removal of the red flag, but, even though the DoD "resolved the Incident Report . . . in [Plaintiff's] favor" it remained on his JPAS account as of the commencement of this action in 2017. (*Id.* ¶ 42; *see id.* ¶¶ 35, 41-43.)

On June 19, 2014, the Knight Sky Defendants posted an addendum ("the Addendum") to Plaintiff's JPAS account. (*Id.* ¶ 36.) The Addendum discusses the legal action Plaintiff brought against Knight Sky, its resolution, and that, as a result, Knight Sky lost out on a contract and has been forced "into near bankruptcy." (*Id.*) Nothing in the addendum seemed to implicate Plaintiff's ability to use or handle sensitive information. Again, Knight Sky did not have valid DoD access to Plaintiff's JPAS account when it posted this information. (*Id.* ¶ 38.) Again, the DoD made representations to Plaintiff that it would resolve this issue, and it did not do so. (*See id.* ¶ 41.) "As a result of Knight Sky's Incident Report and Addendum, Plaintiff has lost contract and employment opportunities" and suffered other harm. (*Id.* ¶ 43.)

On June 19, 2017, three years to the day after the Knight Sky Defendants posted the Addendum, Plaintiff brought this action against the Knight Sky Defendants and the United States. Plaintiff brought a claim of tortious interference with prospective economic and business relations against the Knight Sky Defendants, and a claim of negligence against the United States.

---

[2] Plaintiff seems to refer to the Department of Defense and "the Army" interchangeably. Where Plaintiff alleges that an action was performed by "the Army" the Court will refer to the actor as the "Department of Defense" for the sake of continuity.

(*See* Compl. ¶¶ 44-62.) The Knight Sky Defendants brought a motion to dismiss (ECF No. 12) and the United States did as well (ECF No. 14), and both motions are ripe for review.

**II.** *Standard for Motions to Dismiss under Rules 12(b)(1) and 12(b)(6)*

The United States' motion to dismiss presents, in part, a facial challenge to subject-matter jurisdiction, asserting that the complaint fails to allege facts upon which subject-matter jurisdiction can be based. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (discussing the difference between facial and factual challenges to subject-matter jurisdiction). The burden of proving subject-matter jurisdiction is on the plaintiff. *Id.*

Both the United States and the Knight Sky Defendants have moved to dismiss under Rule 12(b)(6), asserting that Plaintiff's complaint does not "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

### III. *Analysis*

The Court will first consider the United States' motion to dismiss, and then turn to the Knight Sky Defendants' motion.

#### a. *United States' Motion to Dismiss*

"Absent a statutory waiver, the United States is shielded from suit for a civil tort by sovereign immunity." *Doe v. U.S. ex rel. U.S. Dep't of Health and Human Servs.*, Civ. No. TDC-14-1441, 2015 WL 1461236, at *4 (D. Md. Mar. 27, 2015) (citing *Kearns v. United States*, 585 F.3d 187, 193-94 (4th Cir. 2009). The United States has, via the Federal Tort Claims Act ("FTCA"), statutorily waived sovereign immunity for certain claims under certain conditions. *See Talbert v. U.S.*, 932 F.2d 1064, 1065-66 (4th Cir. 1991); *Fleming v. United States*, 200 F. Supp. 3d 603, 608 (D. Md. 2016). Plaintiff's claim, the United States contends, is neither one of those certain claims nor was it brought under those certain conditions. The first question – whether Plaintiff's claim is of a type covered by the FTCA – is jurisdictional in nature, and thus will be discussed first. *See Summers v. U.S.*, 480 F. Supp. 347, 349 (D. Md. 1979).

"Certain categories of torts are excluded from [FTCA] coverage by 28 U.S.C. § 2680," *Summers*, 480 F. Supp. at 349, including claims "arising out of . . . . libel, slander, misrepresentation, [and] deceit," 28 U.S.C. § 2680(h). In determining whether a plaintiff's claim "aris[es] out of" misrepresentation, courts look beyond the labels affixed to a plaintiff's complaint, "and instead look to the substance of the claim, the conduct on which such claim is based, and the gravamen of the complaint." *Sheppard v. U.S.*, 537 F. Supp. 2d 785, 789 (D. Md. 2008). "Because waivers of sovereign immunity must be strictly construed, the plaintiff bears the burden of demonstrating jurisdiction and showing that none of the FTCA's exceptions apply." *Wood v. United States*, 845 F.3d 123, 127 (4th Cir. 2017). Here, construing the

misrepresentation exception broadly, *in order to construe the waiver narrowly*, and mindful of Plaintiff's burden, the Court nevertheless finds that the gravamen of Plaintiff's claim against the United States is negligence, not misrepresentation, and, accordingly, the Court has subject-matter jurisdiction over it.

At bottom, Plaintiff's claim against the United States is that it had a duty to exercise reasonable care in the maintenance of the JPAS system, and that, by allowing the Knight Sky Defendants to upload reports without authorization, and by failing to remove the reports, it breached that duty and caused Plaintiff harm. (*See, e.g.*, Compl. ¶ 56.) To be sure, Plaintiff's claim against the United States *involves* misrepresentation; he alleges that the United States failed to prevent "the [JPAS] system from being used as a platform to enter *false information*," and that it "allow[ed] Knight Sky to enter a *false* Incident Report and Addendum on Plaintiff's JPAS account." (*Id.* ¶¶ 56, 57 (emphasis added).) But even if the United States' negligence resulted in Plaintiff also being harmed by a misrepresentation, that would not mean that a claim against the United States' is barred by the FTCA. *Cf. Sheridan v. U.S.*, 487 U.S. 392, 398-99 (1988) ("[I]t is both settled and undisputed that in at least some situations the fact that an injury was directly caused by an assault or battery will not preclude liability against the Government for negligently allowing the assault to occur.").[3] The Knight Sky Defendants may have, in effect,

---

[3] The misrepresentations by the United States here are akin to those made by the United States in *Block v. Neal*, 460 U.S. 289 (1983). In that case, United States agents promised to supervise the construction of a home for which they had provided the loan. 460 U.S. at 291-92. Those agents represented to the owner that the construction was sound, when in fact the house had several serious defects. *Id.* at 292. After the homeowner brought a negligence claim against the United States, the Supreme Court ultimately ruled that, although the agents had surely made a misrepresentation to the homeowner, that was, if anything, the basis for a separate claim against the United States (and one that would be barred by the FTCA). *See id.* at 296-99. The claim that the homeowner brought was for negligence in the supervision of the construction process, which would have harmed the homeowner regardless of whether the agents had misrepresented the quality of that construction or not. Here, the United States did allegedly misrepresent to Plaintiff that it was taking care of the Incident Report and Addendum when it in fact was not doing so. And, absent the FTCA's misrepresentation exception Plaintiff "could also have brought a claim for negligent misrepresentation to recover for any injury caused by [his] misplaced reliance on advice provided by [the United States] officials . . . . But the partial overlap between these two tort actions does not support the conclusion that if one is excepted under the Tort Claims Act, the other must be as well." *Id.* at 298.

placed a red flag on Plaintiff's account; the United States let them do it. The dispositive fact is that Plaintiff's claim does not rely on any misrepresentation made by the United States.[4] The veracity (or lack thereof) of the Incident Report and Addendum is not central to Plaintiff's claim *against the United States*. Even if they were completely true, the United States would still have (according to Plaintiff) negligently allowed the Knight Sky Defendants to post reports on Plaintiff's JPAS account without authorization.

The United States' argues, relying strongly on *Talbert v. United States*, 932 F.2d 1064 (4th Cir. 1991), that one cannot bring a "negligent maintenance of records" claim in the Fourth Circuit. *See* 932 F.2d at 1067. But the United States reads *Talbert* too narrowly. In that case the "negligent maintenance of records" claim was really a misrepresentation (or defamation) claim, dressed up as something else – the plaintiff's injury stemmed from his former Federal Government employer making misrepresentations about his absences from work. *See id.* at 1065. The court did not hold that the United States can never be liable for negligently maintaining records, or negligently permitting access to a database. Rather, *Talbert* stands for the simple proposition that a plaintiff who has been harmed by a misrepresentation made by the United States cannot circumvent Congressional intent in the FTCA by shoehorning his claim into one of negligence. Plaintiff here did not perform such a contortion, and the Court has jurisdiction over his negligence claim. The Court notes that this holding is in regard to the

---

[4] Neither party presented the Court with a case in which, as here, an initial misrepresentation was allegedly made by a non-government actor and a court still found that a negligence claim against the United States was barred by the misrepresentation exception. There are numerous instances where the initial misrepresentation was made by the United States, and the claim was barred. *See U.S. v. Neustadt*, 366 U.S. 696 (1961) (United States' agent made alleged misrepresentation, claim excepted); *Life Partners Inc. v. U.S.*, 650 F.3d 1026 (5th Cir. 2011) (same); *Hall v. United States*, 274 F.2d 69 (10th Cir. 1959) (same); *Johnson v. United States*, Civ. No. 3:15-CV-00556-RJC-DSC, 2016 WL 2757609 (W.D.N.C. Mar. 24, 2016) (same); *Doe*, 2015 WL 1461236 (same); *Brockway v. VA Connecticut Healthcare System*, No. 3:10-CV-719(CSH), 2012 WL 2154263 (D. Conn. June 13, 2012) (same); *Baker v. U.S.*, 943 F. Supp. 270 (W.D.N.Y. 1996) (same); *see also Alexander v. U.S.*, 787 F.2d 1349 (9th Cir. 1986) (Federal Bureau of Investigation communicated "rap sheet" to future employer that contained records which should have been sealed).

*characterization* of Plaintiff's claim, not its substance. The Court makes no pronouncement today as to, for instance, whether the United States had a duty to maintain JPAS in a certain way, or whether it breached that duty. The Court only holds that Plaintiff's claim is properly characterized as one of negligence, and not a misrepresentation claim in negligence clothing.

Even though Plaintiff's claim is of the type permitted under the FTCA, Plaintiff still must meet certain conditions provided in the FTCA in order for his claim to proceed. *See Summers*, 480 F. Supp. at 349 ("When sovereign immunity is waived, Congress is permitted to specify the terms and conditions under which such suits may be brought."). Before a plaintiff can proceed with a tort claim against the United States, a plaintiff must present his claim, in writing, to the appropriate Federal agency within two years of its accrual. 28 U.S.C. § 2401(b). The claim must then be denied by the agency and Plaintiff must bring his suit within six months of denial. *Id.*; *see Fleming*, 200 F. Supp. at 608. This is non-jurisdictional, and is in the nature of a statute of limitations defense. *See U.S. v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632 (2015).

Plaintiff, it seems, presented a claim to the DoD on October 4, 2015. (*See* Compl. ¶ 9; SF-95 Form, Decl. of Connie M. McConahy Ex. 1, ECF No. 14-2.)[5] This claim was in the form of an "SF-95," a standard form for presenting tort claims to a federal agency. *See Winston-Bey v. United States*, Civ. No. CCB-15-02020, 2015 WL 8757829, at *2 (D. Md. Dec. 15, 2015) (discussing the Standard Form 95). It states that the "DATE AND DAY OF ACCIDENT" was

---

[5] There is some confusion as to when Plaintiff's claim was "presented" to the DoD, as Plaintiff alleges that he "filed" it on October 4, 2015, and the United States contends that it was received on March 4, 2016. For purposes of determining whether Plaintiff complied with the FTCA, the date of presentment is when the form is received, not when it is mailed. *Winston-Bey v. United States*, Civ. No. CCB-15-02020, 2015 WL 8757829, at *2 (D. Md. Dec. 15, 2015). However, as the Court reviews this issue under Rule 12(b)(6), it must accept all plausible alleged facts as true. The Court will therefore assume that the claim was presented on October 4, 2015. This difference is not consequential. Ultimately, whether the Court finds that the claim was presented on October 4, 2015 or March 4, 2016, its analysis of the claim is unchanged.

"10/28/2010." (SF-95 Form.)[6]  For the "BASIS OF CLAIM" section, Plaintiff attached a document that outlined much of the same allegations he has made before this Court. (*Id.*) Importantly, in addition to discussing the 2010 Incident Report, he specifically alleged that "Knight Sky LLC posted an addendum alleging more falsehoods to the 2010 incident on or about June 2014." (*Id.*, Attachment ¶ f.)  The DoD denied Plaintiff's claim on May 9, 2017, and he filed this suit roughly a month later, on June 19, 2017. (*See* Compl. ¶ 9.)  Therefore, *if* Plaintiff's claim accrued on or after March 4, 2014 (two years before he presented his SF-95 to the DoD), then Plaintiff complied with the statute of limitations requirements of the FTCA.

Plaintiff's claim of negligence in regard to the posting of the 2010 Incident Report and the harm that followed accrued well before March 4, 2014, and therefore is barred by sovereign immunity. As the court stated in *Fleming*:

> A claim accrues within the meaning of § 2401(b) when the plaintiff knows or, in the exercise of due diligence, should have known both the existence and the cause of his injury.  The critical facts are that he has been hurt and who has inflicted the injury. This is all that the plaintiff must know . . . .

200 F. Supp. 3d at 608 (alterations, quotation marks, and citations omitted).  Plaintiff knew that Knight Sky had, without authorization, uploaded an Incident Report to his JPAS account in December 2010.  He lost a contract, and his job, as a result in 2011.  Therefore, at the absolute latest Plaintiff knew the existence and cause of his injury in 2011.  Insofar as his negligence claim seeks redress for the harm he suffered as a result of the 2010 Incident Report, it is barred by limitations and, accordingly in this circumstance, by sovereign immunity.

---

[6] The Court may consider documents attached to the motion to dismiss that are "'integral to and explicitly relied on in the complaint . . . [if] the plaintiffs do not challenge [their] authenticity.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (first alteration in the original) (quoting *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)).  Here, Plaintiff himself has cited to the Forms attached to the United States' motion to dismiss. (*See* Opp'n to United States Mot. Dismiss 9, ECF No. 22.)

Plaintiff's claim of negligence in regard to the posting of the 2014 Addendum, however, accrued, at the absolute earliest, on June 19, 2014, the day that the Addendum was posted. This claim was properly presented to the appropriate agency within two years of accrual and was subsequently denied. Therefore, Plaintiff has complied with the statute of limitations provision of the FTCA with regard to his negligence claim against the United States arising out of the 2014 Addendum. Going forward, if Plaintiff's negligence claim proves successful, he can only recover for harm that resulted exclusively from the 2014 Addendum, and did not result at all from the 2010 Incident Report.[7]

Ultimately, the Court finds that Plaintiff's claim, as stated, is not fundamentally a misrepresentation claim, and therefore the Court has jurisdiction. Furthermore, the Court finds that Plaintiff complied with the FTCA statute of limitations provisions with regard to his claim arising out of the 2014 Addendum. Therefore, the Court will deny in part the United States' motion to dismiss.

### b. *Knight Sky Defendants' Motion to Dismiss*

The Knight Sky Defendants ask that the Court dismiss Plaintiff's claim against them on three grounds: first, that their conduct was privileged; second, that Plaintiff has not stated a claim for tortious interference with business relations; and third, that Plaintiff did not bring his claim within the applicable statute of limitations. The Court will first discuss the statute of

---

[7] Plaintiff argues that the harm resulting from the 2010 Incident Report can be considered under his negligence action because of the continuing violations doctrine. Plaintiff misunderstands this doctrine. "[T]he purpose of the continuing violation doctrine is to toll filing deadlines when a plaintiff could not reasonably be expected to perceive the alleged violation before the limitations period has run, or when the violation only becomes apparent in light of later events." *Threatt v. Jackson*, No. 06-CV-3944, 2007 WL 723584, at *2 (N.D. Ill. Mar. 7, 2007) (internal quotation marks omitted). Thus, "[t]he continuing tort doctrine applies where there is no single incident that can fairly or realistically be identified as the cause of significant harm." *Gaudreau v. American Promotional Events, Inc.*, 511 F. Supp. 2d 152, 156 (D.D.C. 2007) (internal quotation marks omitted). Here, the posting of the 2010 Incident Report was a distinct act, and Plaintiff alleges that he experienced harm from that act in 2011. Although the posting of the 2014 Addendum was an instance of, essentially, the same tort, it was a distinct act. It was not as though Plaintiff did not realize he had been harmed by the 2010 Report until after the 2014 Addendum was posted, and therefore the continuing violations doctrine does not apply.

limitations defense, as its resolution narrows the scope of what conduct the Court must consider in assessing the Defendants' arguments regarding privilege and the sufficiency of Plaintiff's complaint.

### i. *Statute of Limitations*

The statute of limitations applicable to Plaintiff's claim is three years. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101. Plaintiff's claim against the Knight Sky Defendants may be substantively different than his claim against the United States, but it accrued at the same time. That is, Plaintiff first learned of the existence of any injury arising out of the 2010 Incident Report and the cause of that injury sometime in late 2010 or in 2011, six years before Plaintiff filed his claim in this Court. Therefore, like Plaintiff's claim against the United States, any action against the Knight Sky Defendants premised on the 2010 Incident Report is barred by the statute of limitations.[8] The 2014 Addendum, however, was posted to Plaintiff's JPAS account on June 19, 2014, exactly three years prior to Plaintiff commencing this action. Therefore, again like the Plaintiff's claim against the United States, Plaintiff's claim against the Knight Sky Defendants is not barred by the statute of limitations insofar as the tortious act was the posting of the 2014 Addendum. Having thus narrowed Plaintiff's claim, the Court can proceed to discuss the Knight Sky Defendants' arguments regarding privilege and the sufficiency of Plaintiff's complaint.

### ii. *Federal Contractor Privilege*

The Knight Sky Defendants boldly state that "[t]he law is clear . . . in the Fourth Circuit and throughout the federal system, that a communication required of and made by a defense contractor to an agency of the United States Government is absolutely privileged." (Knight Sky Defendants' Mot. Dismiss Mem. Supp. 8, ECF No. 17 (footnote omitted) (citing *Becker v. Philco*

---

[8] Plaintiff's arguments regarding the continuing violations doctrine are similarly unavailing in this context.

*Corp.*, 372 F.2d 771, 774 (4th Cir. 1967).) And they are, in a sense, correct: communications that are *required of* and made by a defense contractor to an agency of the United States *are* privileged. The Knight Sky Defendants cite heavily to *Becker* for this proposition, and as an example. There, a disgruntled employee of a defense equipment manufacturer provided negative information to the manufacturer regarding two other employees. 372 F.2d at 772. The manufacturer then investigated those employees and turned over the information to the United States. *Id.* The Fourth Circuit held that the employees could not bring a libel action against the manufacturer because its communication to the Government was privileged. *Id.* at 776.

The privilege set forth in *Becker* does not, however, extend to communications that are *not* required of government contractors. The Knight Sky Defendants have not presented the Court with any case that would suggest otherwise. In *Becker*, the employer was contractually obligated to report all "proven or even suspected compromise[s]" of any employees. 372 F.2d at 772. Similarly, the Knight Sky Defendants cite to a 2004 opinion from the Circuit Court of Virginia which stands for the same proposition: that a contractor may be privileged in reporting suspected adverse conduct when it is required to do so. *See Bridge Tech. Corp. v. Kenjya Grp., Inc.*, No. 186469, 2004 WL 1318884 (Va. Cir. Ct. 2004). The Knight Sky Defendants cite heavily to *Stephenson v. Nassif*, 160 F. Supp. 3d 884 (E.D. Va. 2015), but that case only held that a person who reported information to JPAS acted "under" a federal officer's directions for the purposes of federal officer jurisdiction, and his defense that the communication was privileged was "colorable." *See* 160 F. Supp. 3d at 890-91.

Plaintiff does not allege that the Knight Sky Defendants reported "suspected" adverse information that had been itself reported to them by some third party. Rather, Plaintiff alleges that the Knight Sky Defendants reported irrelevant information about the parties' state litigation,

13

and posted it, without authorization, to the JPAS database. The Knight Sky Defendants have not convinced the Court that they were "required" to post irrelevant information to the Plaintiff's JPAS account years after Plaintiff had stopped working at Knight Sky, and solely for the purpose of harming the Plaintiff.

The best argument the Knight Sky Defendants mount in support of this illusive requirement is not a very good one. They point to language in the National Industrial Security Program Operating Manual ("NISPOM") which states: "Contractors shall report adverse information coming to their attention concerning any of their cleared employees. Reports based on rumor or innuendo should not be made. *The subsequent* termination of employment of an employee does not obviate the requirement to submit this report." (*See* NISPOM § 1-302(a), Knight Sky Defendants' Mot. Dismiss Ex. A, ECF No. 17-1 (emphasis added).)[9] The Knight Sky Defendants read this language to mean that they have a continuing obligation to report all information (apparently even false or irrelevant information) regarding Plaintiff, even after his termination of employment. The Court reads it differently. The natural meaning of this passage would suggest a) that Contractors are to report adverse information that is presented to them, b) that Contractors are not supposed to report "rumor or innuendo" and c) that Contractors are to report such adverse information even if they plan on firing the employee. This last instruction only lends credence to Plaintiff's contention that the Knight Sky Defendants lost authorization to post reports on Plaintiff's JPAS account after he left Knight Sky in 2008.[10]

---

[9]The Court may consider documents that are official public records when evaluating a motion to dismiss. *See Witthohn v. Federal Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006).

[10]Other statements in NISPOM and elsewhere enforce this inference. *See* NISPOM § 1-302(c) (instructing Contractors to "report . . . the termination of employment."); (Industrial Security Letter, Knight Sky Defendants Mot. Dismiss Ex. C, ECF No. 17-3 ("Contractors are reminded that any adverse information coming to their attention regarding cleared employees must be reported *for the full duration of the individual's employment with the company*.").) Nevertheless, the Court does not need to decide whether the Knight Sky Defendants *did* lack of authorization when they uploaded information to Plaintiff's JPAS account after 2008. It need only decide that Plaintiff plausibly alleges as such, and it finds that Plaintiff did.

The Court can find no support for the contention that a Government Contractor is absolutely privileged in its false, irrelevant, or unauthorized communications to the United States Government. In fact, insofar as the purpose of privileging a Contractor's reports is to ensure their candor in reporting information that could potentially impact national security, then privileging spurious and unauthorized communications would seem counterproductive. *See Becker*, 372 F.2d at 774 (discussing the purpose behind the privilege). The Court does not find that the 2014 Addendum was a privileged communication, and it will not dismiss Plaintiff's complaint against the Knight Sky Defendants on that ground.

### iii. *Failure to State a Claim*

The Knight Sky Defendants also seek dismissal on the ground that Plaintiff has failed to state a claim for tortious interference with business relations. The elements of a cause of action for tortious interference with business relations are: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiff; (3) done to cause damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) damage resulting." *Kwang Dong Pharm. Co. v. Han*, 205 F. Supp. 2d 489, 496 (D. Md. 2002) (citing *Natural Design, Inc. v. Rouse Co.*, 485 A.2d 663, 675 (Md. 1984)). The Knight Sky Defendants argue that Plaintiff has failed to sufficiently allege the third element, because they acted with justifiable cause when they posted the 2014 Addendum, and furthermore, Plaintiff has alleged no other wrongful conduct. The Knight Sky Defendants argument here is a rehash of their privilege argument – asserting that they were required by law to post the Incident Report and Addendum, and thus acted with justifiable cause. The Court is not persuaded by this argument for the reasons outlined above.

The Knight Sky Defendants further argue that in order to plead this third element of tortious interference with business relations, Plaintiff must plead a "predicate tort," (Knight Sky Defendants' Reply 2, ECF No. 21), but they misunderstand Maryland law. Plaintiffs asserting a claim of tortious interference with business relations need only plead that the actions of the defendant are wrongful, independent of their impact on Plaintiff's business; they need not plead an entirely separate tort (though they may). *See Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 267-71 (Md. 1994). The malice requirement here serves to distinguish between "the rough and tumble of the marketplace" and behavior that is "wrongful so as to give rise to a cause of action in tort." *Alexander & Alexander*, 650 A.2d at 269 (internal quotation marks and citations omitted). In order to draw this line, and protect competition while punishing wrongdoers, Maryland law requires a showing, generally, of "both a tortious *intent* and improper or wrongful *conduct*." *Id.* at 271 (emphasis added) (quoting *Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 119 (Md. 1994)). That is, intent to engage in bad behavior aimed at harming a competitor, as well as some improper or wrongful conduct. Maryland law does not require tortious intent and *tortious* conduct, i.e. conduct that is itself a tort. Here, Plaintiff alleges that the Knight Sky Defendants acted with tortious intent to harm Plaintiff financially, and that they acted without authorization when they posted the Incident Report and Addendum. Those are sufficient allegations to support a claim for tortious interference with business relations. That Plaintiff did not separately plead the elements of defamation, or some other tort, is of no consequence.

The Knight Sky Defendants finally argue that Plaintiff failed to allege interference with specific business relations. When pleading tortious interference with business relations "an individual must allege more than a disruption of a future relationship to a yet to be determined

16

party." *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 542 (D. Md. 2006). That is, a plaintiff "*must* establish some evidence that a prospective business relationship is likely to occur." *Id.* (emphasis in the original). If the Court were to consider the harm resulting from the 2010 Incident Report, the Knight Sky Defendant's argument here would fail – Plaintiff clearly alleged several specific business relationships that were adversely impacted by the Knight Sky Defendants' alleged wrongdoing, including loss of a $1 million contract and his position at Northrop Grumman. But given the Court's resolution of the statute of limitations issue, the Knight Sky Defendants' have lucked into a sound argument here.

Unlike the ramifications of the 2010 Incident Report, Plaintiff does not allege any specific business relationship that has been harmed as a result of the 2014 Addendum. Plaintiff conclusorily states that "[a]s a result of Knight Sky's Incident Report and Addendum, Plaintiff has lost contract and employment opportunities, sustained damaged [sic] to his career and personal and professional reputation, and lost past and future earnings." (Compl. ¶ 43.) But he failed to allege any specific contract, employment opportunity, or business relationship that was damaged *because of the 2014 Addendum alone*. Accordingly, Plaintiff's claim against the Knight Sky Defendants will be dismissed. The Court notes that Plaintiff is free to move the Court to amend his complaint to include such specific allegations of harm, should he believe he can prove such allegations at trial. The Court is instructed to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Should Plaintiff wish to amend his complaint beyond adding specific allegations of harm resulting from the 2014 Addendum, he should be mindful that the Court is also instructed to deny a motion to amend when the proposed amendments would be futile. *See Laber v. Harvey*, 438 F. 3d 404, 426 (4th Cir. 2006).

## IV. *Conclusion*

Plaintiffs claim against the United States is one of negligence, and is not grounded in misrepresentation. However, Plaintiff's claim of negligence arising out of the 2010 Incident Report was not presented to the appropriate federal agency within two years of its accrual. Accordingly, the Court has subject-matter jurisdiction over Plaintiff's claim against the United States, but only insofar as the claim seeks redress for harm stemming from the 2014 Addendum. To that extent it will not be dismissed. Plaintiff's claim against the Knight Sky Defendants is barred by the statute of limitations except insofar as it is based on the 2014 Addendum. However, Plaintiff has failed to allege harm to specific business relations arising out of the 2014 Addendum *in particular* and therefore his claim against the Knight Sky Defendants will be dismissed by accompanying order.

DATED this 7th day of March, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge