# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RODERICK PRESS, | * |
| Plaintiff | * |
| v. | *     CIVIL NO. JKB-17-1667 |
| UNITED STATES OF AMERICA, *et al.*, | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Plaintiff brought this lawsuit against the United States of America ("the Government"), and Knight Sky LLC ("Knight Sky") and George Knizewski (together with Knight Sky "the Knight Sky Defendants") on June 19, 2017. (Compl., ECF No. 1.) In an order dated March 8, 2018, the Court granted in part and denied in part the Government's motion to dismiss, and granted the Knight Sky Defendants' motion to dismiss. (*See* March 8 Order, ECF No. 27.) Plaintiff has moved to amend his complaint in response. (Mot. Amend, ECF No. 31.) The Knight Sky Defendants and the Government have responded in opposition (ECF Nos. 32-33) and Plaintiff has replied (ECF No. 34). Therefore, Plaintiff's motion is ripe for review. There is no need to hold a hearing to resolve the matter. *See* Local Rule 105.6 (D. Md. 2016). The Court will grant Plaintiff's motion for leave to amend because his amendments are not futile, nor were they brought in bad faith or in a manner that is prejudicial to the Defendants. The Court interprets the Government's opposition in part as a motion to strike portions of Plaintiff's proposed amended complaint, which the Court will deny without prejudice, and in part as a

motion to vacate in part an earlier order of the Court (*see* March 20 Order, ECF No. 30), which the court will grant.

I.   *Background*[1]

From 2006 to 2008 Plaintiff performed information technology and security work for Knight Sky, a company that contracts with the Federal Government. (Compl. ¶¶ 10, 14, 18.) Knight Sky used a system known as the Joint Personnel Adjudication Verification System ("JPAS") in order to process security-related information for its employees. (*See id.* ¶ 16; *id.* p. 1 (defining "JPAS").) JPAS is an "electronic personnel database maintained by the Department of Defense [("DoD")] for the purpose of collecting reports touching on a person's ability to use and to handle classified information." (*Id.* ¶ 16.) During Plaintiff's employment with Knight Sky, Knight Sky was allowed to post reports to JPAS that would affect Plaintiff's ability to handle classified information. (*Id.* ¶ 17.) Before leaving Knight Sky in 2008, Plaintiff "separated himself . . . from the JPAS system," such that "Knight Sky was no longer a servicing entity to Plaintiff's security clearance" and was no longer allowed to update his record. (*Id.* ¶ 19.)

Apparently, Plaintiff and Knight Sky did not part ways amicably. After leaving Knight Sky, Plaintiff "activated" a corporation that he had formed a decade earlier, Astraeos Technologies, Inc. ("Astraeos"), and he began bidding on government contracts, including contracts that Knight Sky would bid on. (*Id.* ¶¶ 20, 22.) Plaintiff also took a job at Northrop

---

[1] The Court is evaluating whether to grant Plaintiff's motion for leave to amend his complaint, primarily on the basis of whether his proposed amendments would be futile, which itself is primarily judged by determining whether Plaintiff's proposed amendments would survive a motion to dismiss. *See Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (motion for leave to amend should be denied if amendments are futile); *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (amendments are futile if they would not survive a motion to dismiss). Therefore, the facts set forth here are stated as if the Court were evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), *i.e.*, they are taken from the Plaintiff's complaint and assumed to be true. The Court will also discuss its earlier memorandum opinion in this case.

Grumman. (*Id.* ¶ 21.) In March 2009, Knight Sky's CEO, George Knizewski, told attendees at a trade show that they should not do business with Astraeos. (*Id.* ¶ 23.) This led to Astraeos filing suit against the Knight Sky Defendants in Maryland state court in April 2009, to which the Knight Sky Defendants responded with several counterclaims. (*Id.* ¶¶ 24-25.) The Circuit Court granted both parties directed verdicts, finding that each failed to show damages, and further that Knight Sky failed to "present sufficient evidence as to liability." (*Id.* ¶ 25.) The result was upheld by the Maryland Court of Special Appeals in September 2010. (*Id.*)

In October 2010, one month after the Court of Special Appeals' decision and two years after Plaintiff had left Knight Sky, Knight Sky published a security incident report (the "Incident Report") on Plaintiff's JPAS account. (*Id.* ¶ 26.) This report "contained falsehoods" and mostly included accusations that Plaintiff had mishandled sensitive data or misused various systems with the intent to harm Knight Sky financially. (*Id.* ¶¶ 26-28.) Knight Sky did not have proper authorization to post this largely, if not entirely, false report. (*Id.* ¶ 26.) As a result of the Incident Report, "a red flag was placed on Plaintiff's JPAS account." (*Id.* ¶ 28.)

The DoD "reassured Plaintiff that the Incident Report would be favorably adjudicated and removed from his JPAS account." (Compl. ¶ 30.) As a result of the Incident Report (and red flag) being on Plaintiff's JPAS account, he lost his job at Northrop Grumman, and lost a five year contract with iWatch Security Solutions, LLC. (*Id.*¶¶ 31-32.) Despite repeated representations by the DoD that the Incident Report was adjudicated in Plaintiff's favor and that the red flag would be removed, the Incident Report remained on Plaintiff's JPAS account as of the commencement of this action in 2017. (*Id.* ¶ 42; *see id.* ¶¶ 35, 41-43.) The red flag was removed in October 2015. (*Id.* ¶ 42.)

On June 19, 2014, the Knight Sky Defendants posted an addendum ("the Addendum") to Plaintiff's JPAS account. (*Id.* ¶ 36.) As printed in Plaintiff's complaint, the Addendum reads as follows:

> Case against Astreos [sic] Mr. Press and his associates was brought inform to the Civil Courts of Frederick Maryland. Case was dismissed as to the actions of Mr. Press did nor [sic] result in a direct financial gain to Mr. Press. The case was appealed on the grounds that his inability to achieve personnel gains does not dismiss him wrongful conduct and illegal activities. As a direct result of Mr. Press's action, a $5 Million Dollar contact was terminated and put out on competitive bid. Loss of Revenue resulting in the loss of all employees and forced the company into near bankruptcy.

(*Id.* (alteration in the original).) As with the 2010 Incident Report, the Knight Sky Defendants did not have authorization to post this information to Plaintiff's JPAS account. But unlike the 2010 Incident Report, this Addendum does not seem to allege information that (regardless of its accuracy) relates to Plaintiff's ability to use or handle sensitive information. It appears to be an irrelevant complaint about Plaintiff's prior litigious activity and its purported impact on Knight Sky. "Upon [Plaintiff's] information and belief, [the Knight Sky Defendants] filed the Addendum intending that it would cause the security clearance to continue to be red flagged in the JPAS system." (*Id.* ¶ 37.)

Three years to the day after the Knight Sky Defendants posted the Addendum, Plaintiff brought suit in this Court against the Knight Sky Defendants and the United States. Plaintiff brought a claim of tortious interference with prospective economic and business relations against the Knight Sky Defendants and a claim of negligence against the United States, brought under the Federal Tort Claims Act ("FTCA"). The Knight Sky Defendants and the United States brought motions to dismiss, and the Court granted the Knight Sky Defendants' motion, and granted in part and denied in part the Government's motion. (*See* Mem., ECF No. 26.)

The Knight Sky Defendants made four arguments in their motion to dismiss. First, the Knight Sky Defendants argued that Maryland's three-year statute of limitations barred Plaintiff's action, as it was based on the 2010 Incident Report but brought in 2017. Second, the Knight Sky Defendants argued that they were entitled to the "federal contractor privilege," which, generally speaking, protects contractors from liability arising out of communications that they are required to make to an agency of the United States. (*See* Mem. at 12-13 (discussing *Becker v. Philco Corp.*, 372 F.2d 771 (4th Cir. 1967).) Third, they argued that Plaintiff was required to plead a "predicate tort," *i.e.*, a separate tort, to demonstrate wrongful conduct in a tortious interference action. Finally, the Knight Sky Defendants argued that Plaintiff had not sufficiently alleged a specific business relationship that was harmed by the Knight Sky Defendants' alleged tortious conduct, and therefore, under Maryland law, could not state a claim for tortious interference with prospective business relations.

The Court found these arguments largely unavailing. Maryland's three year statute of limitations *did* bar Plaintiff's action insofar as it was based on harms that he suffered due to the 2010 Incident Report, but it would not bar an action based on harms suffered due to the 2014 Addendum, which was posted three years prior to Plaintiff bringing suit. The Court found that the Knight Sky Defendants' reports to JPAS were not privileged because, at least given the record before the Court and the standard of review, it did not appear that the Knight Sky Defendants were "required" to make these communications to an agency of the United States. Third, under Maryland law Plaintiff only needed to plead that the conduct undergirding his tortious interference claim was wrongful or improper; not an entirely separate tort. Plaintiff alleged that the Knight Sky Defendants had uploaded injurious information to Plaintiff's JPAS

5

account without proper authorization, and that was sufficiently "improper" to assert a claim of tortious interference.

Finally, with respect to the Knight Sky Defendants' contention that Plaintiff had not identified specific business relationships that had been harmed by their alleged tortious conduct, the Court noted that Plaintiff had alleged several such relationships, including his lost job at Northrop Grumman, and a lost $1 million contract. But, Plaintiff alleged that these economic opportunities were harmed as a result of the 2010 Incident Report—Plaintiff lost his job and the contract in 2011, three years before the Addendum was even posted. Given the Court's earlier finding that the statute of limitations had run on claims arising out of the 2010 Incident Report, the Court explained that Plaintiff needed to allege some "specific business relationship that ha[d] been harmed as a result of the 2014 Addendum." (Mem. at 17.) Plaintiff had not done so. He had alleged that his Security Management Officer warned him that "he may encounter difficulties" as a result of the Addendum, and he conclusorily alleged that he "lost contract and employment opportunities" as a result of both the Incident Report and Addendum (Compl. ¶¶ 39, 43), but he nowhere alleged a particular business relationship that was "damaged *because of the 2014 Addendum alone*." (Mem. at 17.) The Court therefore granted the Knight Sky Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), but noted that Plaintiff could seek leave to amend his complaint to include allegations of relationships that were harmed specifically due to the 2014 Addendum, should he believe he can prove such allegations at trial.

The Government argued that Plaintiff's claim was barred by sovereign immunity because it was not a type of claim permitted under the FTCA, nor was it brought in accordance with the FTCA's administrative process. The Court found that the claim was at heart a negligence claim, which may be brought under the FTCA, but it agreed with the Government that Plaintiff had not

followed the FTCA's administrative process with respect to his claim arising out of the 2010 Incident Report. Therefore, the Court granted the Government's motion in part, but denied it in part and permitted Plaintiff to proceed with his claim insofar as it was based on the 2014 Addendum.

The Court entered its order granting the Knight Sky Defendants' motion to dismiss and granting in part and denying in part the Government's motion on March 8, 2018. The Court ordered the Government to answer Plaintiff's complaint within the time allotted under Federal Rule of Civil Procedure 12(a)(4). Plaintiff, however, indicated that he was going to move to amend his complaint. The Government therefore moved the Court to grant the Government additional time to respond, so that, should the Court grant Plaintiff's motion to amend, the Government would only have to answer a single complaint. The Court granted the Government's motion by an order issued on March 20. In that order, the Court stated that if Plaintiff moved to amend his complaint by March 30, and if the Court granted that motion to amend, the Government would be ordered to answer that amended complaint in the time set forth under Federal Rule of Civil Procedure 12(a)(4).

Plaintiff did move to amend his complaint by March 30. Plaintiff moved for leave to file an amended complaint, and styled his motion as one for leave to amend and to vacate a judgment. That motion is now fully briefed and ripe, and the Court will turn to its disposition.

**II.**   *Standard*

After a party has amended his pleading once, he "may amend [his] pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Court "should freely give leave when justice so requires." *Id.* The Fourth Circuit has stated that leave to amend under Rule 15(a) should be denied only in three situations: when the opposing party

7

would be prejudiced, when the amendment is sought in bad faith, or when the proposed amendment would be futile. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). A proposed amendment is considered futile if it cannot withstand a motion to dismiss. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

When considering whether a proposed amended complaint could withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the legal sufficiency of the proposed complaint. *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (explaining the standard for a motion to dismiss under Rule 12(b)(6)). It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Instead it must take as true all plausible factual allegations, and determine whether they state a claim upon which relief could be granted. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### III. *Analysis*

The Court will first discuss the Government's opposition to the Plaintiff's motion, and then turn to the arguments put forth by the Knight Sky Defendants.

#### a. *The Government's Opposition*

The Government filed an opposition to Plaintiff's motion for leave to amend, but does not really oppose Plaintiff's motion. The Government does not oppose Plaintiff's request to amend his complaint nor does it oppose any particular amendment. Rather, the Government filed its opposition to raise two concerns. First, the Government points out that, despite the Court's earlier opinion explaining that Plaintiff did not comply with the FTCA for claims arising out of the 2010 Incident Report, Plaintiff's proposed amended complaint continues to incorporate the 2010 Incident Report into his negligence claim against the Government. (*See,*

*e.g.*, Proposed Am. Compl. ¶ 62, ECF No. 31-1.) Put differently, Plaintiff has not proposed any amendments to his negligence claim against the Government despite the Court's earlier opinion. Second, the Government wishes to "reserve[] the right to move to dismiss Plaintiff's proposed [new] Privacy Act claim." (Gov't's Opp'n 4, ECF No. 33.) Given the substance of the Government's opposition, the Court sees the Government's pleading in the following light: as a motion to strike certain statements from Plaintiff's proposed amended complaint, and as a motion to vacate the Court's March 20 Order in part, specifically the order that the Government "answer" Plaintiff's amended complaint should the Court grant Plaintiff leave to amend.

With respect to the Government's request that the Court "require Plaintiff to excise [certain] allegations" (Gov't's Opp'n at 4), the Court will decline the request and deny without prejudice what it construes as the Government's motion to strike. Under Federal Rule of Civil Procedure 12(f) the Court has discretion to strike material from a pleading that is "redundant, immaterial, impertinent, or scandalous." Although the Government is correct that the Court did explicitly grant the Government's motion to dismiss in part based on its finding that the Government had not waived sovereign immunity for a claim brought by Plaintiff arising out of the 2010 Incident Report, the Court finds its earlier memorandum and order in this case sufficient to foreclose Plaintiff's recovery on such a claim. It is not necessary to comb through Plaintiff's complaint and redact any mention of the 2010 Incident Report. Should the Government be found liable on Plaintiff's negligence claim, Plaintiff cannot recover for harm caused by the 2010 Incident Report alone.

There is a subtle distinction here. In the Court's earlier memorandum opinion, it explained that the continuing violations doctrine did not apply to Plaintiff's claim. (*See* Mem. at 11 n.7.) The Court explained that "[t]he continuing tort doctrine applies where there is no single

incident that can fairly or realistically be identified as the cause of significant harm." (*Id.* (quoting *Gaudreau v. American Promotional Events, Inc.*, 511 F. Supp. 2d 152, 156 (D.D.C. 2007).)  Plaintiff was harmed by the 2010 Incident Report well before the 2014 Addendum was posted, and knew that the source of that harm was the 2010 Incident Report.  "It was not as though Plaintiff did not realize he had been harmed by the 2010 Report until after the 2014 Addendum was posted." (*Id.*)  So, Plaintiff cannot recover for harm caused by the 2010 Incident Report alone, *i.e.*, the harms Plaintiff suffered because of the 2010 Incident Report prior to the 2014 Addendum being posted, or any harms that Plaintiff may have suffered regardless of the 2014 Addendum.  Those claims accrued sometime in 2011 and Plaintiff did not timely present them to the appropriate Federal agency.

But, Plaintiff can recover for harm "caused" in part by the 2010 Incident Report, so long as the legal cause of that harm was the 2014 Addendum.  Plaintiff's surviving negligence claim against the Government is basically this:  because of the Government's negligence in resolving the 2014 Addendum, Plaintiff suffered harm.  That harm may be in part due to the information contained in the 2010 Incident Report, and thus, in a sense, Plaintiff is alleging harm that was "caused" by the 2010 Incident Report.  But the legal cause of the harm was the Government's negligence regarding the 2014 Addendum.  Causation in tort cases can often be confusing, and this case is no different, but the result of the Court's analysis is fairly simple:  Plaintiff cannot recover for harms caused solely by the 2010 Incident Report, meaning Plaintiff cannot recover for his lost job at Northrop Grumman, his lost $1 million contract, or anything else that occurred before the 2014 Addendum was posted.

With respect to the Government's reservation of its "right to move to dismiss Plaintiff's proposed Privacy Act claim," the Court will grant what it construes as the Government's request

to vacate in part the Court's March 20 order. In that Order, at the request of the Government, the Court granted the Government additional time to answer Plaintiff's complaint. The Court (and, it would seem, the Government) was operating on the assumption that any proposed amendments to Plaintiff's complaint would be allegations against the Knight Sky Defendants, and that Plaintiff would not change his claim against the Government. That assumption has proven partially correct, in that Plaintiff does not propose to amend his negligence claim. But, Plaintiff proposes to add an entirely new claim against the Government. The Court will therefore vacate in part its March 20 Order. The Government is no longer required to "answer" Plaintiff's amended complaint within the time allotted under Federal Rule of Civil Procedure 12(a)(4). The order accompanying this memorandum will explain that the Government shall "respond" to Plaintiff's amended complaint within the time allotted under Federal Rule of Civil Procedure 12(a)(4). The Government may, if it chooses, bring a motion to dismiss the new claim in Plaintiff's amended complaint.

  **b.** ***Knight Sky Defendants' Opposition***

  As an initial matter, although Plaintiff styled his motion in part as one to vacate a judgment, the Court does not find it necessary to consider Plaintiff's motion in that light. In the Court's March 8 Order it granted the Knight Sky Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) but it did not explicitly state that such dismissal was with prejudice, nor did it explicitly dismiss the Knight Sky Defendants as parties to this case. Furthermore, the Court explained in its earlier memorandum accompanying that order, that Plaintiff could seek leave to amend his complaint to include additional allegations against the Knight Sky Defendants. Thus, the Court does not view its original dismissal of the Knight Sky Defendants as a final dismissal, and accordingly does not need to vacate a judgment in order to

grant Plaintiff's motion for leave to amend his complaint. *See* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 1998) ("As . . . numerous case citations . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final." (citing, *inter alia*, *Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011)).

The Court will grant Plaintiff leave to amend his complaint unless the opposing party would be prejudiced by the amendments, the amendments are sought in bad faith, or when the proposed amendments would be futile. *Laber*, 438 F.3d at 426. Plaintiff's proposed allegations regarding his claim against the Knight Sky Defendants set forth two specific business relationships that were harmed by the Knight Sky Defendant's tortious posting of the 2014 Addendum. The Knight Sky Defendants argue that these amendments would be futile, as they would not survive a motion to dismiss.

Plaintiff's relevant proposed allegations set forth the following:

In 2014-2015, Mr. Marvin Greenlee, a long-time independent contractor that works with civil and government sectors installing network access control (NAC) systems, approached Plaintiff, whose company was a Service Disabled Veteran Owned (SDVO) Business, to partner with him to service government contracts installing and maintaining NAC systems . . . .

. . . . Mr. Greenlee sought Plaintiff's partnership [because] he had the requisite skills, knowledge, and expertise in cybersecurity which would make him qualified for such government contracts, especially ones with a Section 8A caveat. When Plaintiff informed Mr. Greenlee of the 2014 Addendum to his JPAS incident report, however, Mr. Greenlee understood that such information on his JPAS record–specifically information that he misused government computers–would be an automatic bar for consideration of contracts involving cybersecurity, and that any such endeavors to bid on those respective contracts with Plaintiff would be an unnecessary expenditure of time, money, and resources. Accordingly, in or about October 2015, Mr. Greenlee ceased discussions with Plaintiff on pursuing such contracts with him.

Similarly, in September 2014, Plaintiff was approached by Mr. Brian Tunson to assist him on an existing contract involving cybersecurity, which would pay up to $150,000. Mr. Tunson was unable to use Plaintiff due to the open incident report, which included the Addendum.

(Proposed Am. Compl. ¶¶ 40-42.)

The Knight Sky Defendants make two arguments with regard to futility: First, they argue that these amendments describe business relationships that would have been formed between third parties and Astraeos, Plaintiff's company, and not Plaintiff individually. Therefore, the Knight Sky Defendants argue, Plaintiff does not have standing to assert a tortious interference claim in regard to these business relationships. Second, they argue that these allegations are not sufficiently specific to allege a claim of tortious interference under Maryland law.

With regard to the Knight Sky Defendant's first argument—that Plaintiff has no standing to bring a claim for tortious interference with a business relationship between a third party and Astraeos—their reading of the law is too technical. The Knight Sky Defendants rely almost entirely on *Baron Financial Corp. v. Natanzon*, 471 F. Supp. 2d 535 (D. Md. 2006), which was a case involving a claim of tortious interference with an existing contract. *Baron* explained that, "Tortious interference with business relationships arises only out of the relationship between three parties, the parties to a contract or other economic relationship . . . and the interferer." 471 F. Supp. 2d at 539 (quoting *K & K Mgmt., Inc. v. Lee*, 557 A.2d 965, 973 (Md. 1989)). "As a result," the *Baron* court stated, "a shareholder or member of a corporation or LLC may not recover for tortious interference of the business or contract of the corporation or LLC." *Id.* at 540.

This proposition may be generally correct, but it is not a rule. The Restatement (Second) of Torts § 766, which discusses tortious interference with an existing contract, and which *Baron* cited with approval, explains:

> [. . .] [I]f A induces B to break a contract with C, persons other than C who may be harmed by the action as, for example, his employees or suppliers, are not within the scope of the protection afforded by this rule, *unless A intends to affect*

> *them.* Even then they may not be able to recover *unless A acted for the purpose of interfering with their contracts.*

(emphasis added) (citation omitted) (cited in *Baron*, 471 F. Supp. 2d at 540). It is not as though shareholders or owners of a company are by definition precluded from bringing a tortious interference suit against a party that tortiously interferes with a business relationship between the company and a third party. Rather, such persons would only be able to bring such a suit if they could demonstrate that the third party was really trying to harm *them*, specifically, but did so by improperly harming the business.[2]

So, even if Plaintiff's claim was that because of the Knight Sky Defendants' actions, Astraeos was unable to enter into a contract, Plaintiff would still be a proper party to bring the claim, *if* he alleged that the Knight Sky Defendants were trying to harm him specifically. *Cf. Baron*, 471 F. Supp. 2d 535, 541-42 (noting that the person bringing the tortious interference claim "failed to allege that he was either a separate party to the contract or that he had a distinct business relationship with the [third parties]." (emphasis added)).

But, it is important to note that Plaintiff, unlike the aggrieved party in *Baron*, did not bring such a claim. He alleged tortious interference with *prospective* business *relations*, not interference with an *existing contract*. *See Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 117 (Md. 1994) (noting that tortious interference "is committed when a third party's intentional interference with another in his or her business or occupation induces a breach of an existing contract *or, absent an existing contract, maliciously or wrongfully infringes upon an economic relationship.*" (emphasis added)). He does not allege that there was a particular contract between Astraeos and a third party that was harmed by the Knight Sky Defendants' actions, and he does

---

[2] This principle generally applies to contract law as well: when a promisor breaks a promise to a promisee, a third party who may be harmed by the breach generally cannot sue on a breach of the contract unless they were an intended beneficiary of the contract. *See Stroh Brewery Co. v. Allegany Beer Dist.*, 989 F. Supp. 740, 743 (D. Md. 1996) (citing *Bolick v. Bd. of Educ. of Charles Cty.*, 260 A.2d 31 (Md. 1969)).

not need to. Nor does he have to allege that there was a particular contract that *would* have been formed between Astraeos and a third party but for the Knight Sky Defendants' behavior (though his proposed allegations suggest the possibility of such contracts). Instead, Plaintiff may plead malicious and improper interference with a prospective economic relationship. And he has.

The meat of Plaintiff's claim is that the Knight Sky Defendants' improper behavior prevented Plaintiff, himself, from being able to work with certain third parties. Perhaps the actual business relationship that would have resulted would have involved Plaintiff's company, Astraeos, but that is largely immaterial (for a determination of liability at least). Simply put, Plaintiff does not allege that the Knight Sky Defendants intended to harm Astraeos, that they acted improperly to do so, and that Plaintiff, as the owner of Astraeos, was harmed economically as a result. The claim has a slight but important difference. Plaintiff alleges that the Knight Sky Defendants intended to harm *him* and acted improperly to do so. Therefore, Plaintiff has standing to bring this claim.

To be sure, Plaintiff's proposed complaint may be susceptible to a contrary interpretation. Plaintiff alleges that in 2009 Knizewski told trade show attendees not to do business with Astraeos, and that Astraeos sued Knight Sky in 2010 as a result. This could suggest that the Knight Sky Defendants' ire was directed towards Astraeos, whom they saw as a competitor, and that their tortious conduct of besmirching Plaintiff's security credentials was really conduct directed at undermining Astraeos' ability to compete for contracts. Under that interpretation, Astraeos is the victim with standing to sue; Plaintiff is merely a bystander. At this stage in the proceedings however, the Court is to make inferences in Plaintiff's favor, not against him. If the Court does so, Plaintiff's complaint tells a tale of a former employee who, after competing with his former boss, became the target of that company's ill will, resulting in the company

15

improperly posting negative information about him and, when his record was going to be cleared, posting more unauthorized and irrelevant material to further prevent him from obtaining work. Perhaps none of that can be proven, and maybe it can even be proven untrue. But as it stands, it is enough to support a tortious interference claim brought by Plaintiff himself.

The Knight Sky Defendants' second argument as to why Plaintiff's proposed new allegations would be futile is that these new allegations do not present, with sufficient specificity, particular business relationships that were harmed by the Knight Sky Defendants' allegedly tortious behavior. Again, the Knight Sky Defendants appear to misunderstand the law of tortious interference, or perhaps the substance of Plaintiff's proposed amended complaint.

The elements of tortious interference with prospective business relations are: "(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 269 (Md. 1994) (quoting *Willner v. Silverman*, 71 A. 962, 964 (Md. 1909)). None of these elements dictate that a plaintiff must allege specific, concrete prospective business relationships that were harmed in order to state a claim.

Still, it is true that a plaintiff must allege more than "interference with one's occupation and livelihood in general." *Baron*, 471 F. Supp. 2d at 542. A plaintiff "must identify a possible future relationship which [was] likely to occur." *Id.* As the court in *Baron* explained, identifying a specific relationship is necessary at least because it brings the other elements into clearer view; *i.e.*, without a particular business relationship to focus on, how can the factfinder

determine causation (that defendant's tortious acts caused the deterioration of this particular relationship), or damages (what was this particular relationship "worth")? *See id.*

As for causation, "in order to establish causation in a wrongful interference action, the plaintiff must prove that the defendant's wrongful or unlawful act caused the destruction of the business relationship which was the target of the interference." *Med. Mut. Liability Soc. of Md. v. B. Dixon Evander and Assocs., Inc.*, 660 A.2d 433, 439 (Md. 1995). This is not, however, a particularly special aspect of a tortious interference claim. Rather, "[i]n any tort action, the plaintiff must establish that the defendant's tortious conduct was a cause in fact of the injury for which compensation is sought." *Id.*

Plaintiff's proposed allegations describe more than "interference with one's occupation and livelihood in general," and much more than what the party in *Baron* pleaded, which was "some damage to his relationship with some unidentified [third-parties] at some future time in some future business he might have." 471 F. Supp. 2d at 542, 546. Plaintiff identifies two "possible future relationship[s] which [were] likely to occur." *Id.* He alleges damage to specific relationships with identified third-parties at a specific time in a specific business. These allegations are enough that a factfinder can weigh the impact of the still timely tortious conduct—*i.e.*, the 2014 Addendum. Did the Knight Sky Defendants intend to target, and cause the destruction of, these types of business relationships, or even these specific business relationships? *See B. Dixon Evander*, 660 A.2d at 439. If so, what would these relationships have been worth? That Plaintiff was not more specific in his allegations—outlining particular terms, compensation, and so forth—is, if Plaintiff is to be believed, largely the fault of the Knight Sky Defendants. According to Plaintiff, these relationships were "made hypothetical by

17

the very wrong of the defendant." *See Baron*, 471 F. Supp. 2d at 546 (quoting Restatement (Second) of Torts § 774A).

The Knight Sky Defendants argue that Plaintiff engaged in some "wishful thinking" regarding what contracts he and Mr. Greenlee may have won. (*See* Knight Sky Defs.' Opp'n 5-6, ECF No. 32.) Perhaps they are correct. But that argument misunderstands the relationship that Plaintiff alleges was harmed by the Knight Sky Defendants' conduct. Plaintiff alleges that it was his prospective *relationships* with *Mr. Greenlee and Mr. Tunson* that were harmed; not Astraeos' prospective *contracts* with the *Federal Government*. Perhaps the proof will show that Mr. Greenlee and Plaintiff would likely not have been able to secure contracts, and that their relationship would not have been profitable at all. That may affect damages in this case, in the event that liability is found. But at this early stage, taking Plaintiff's allegations as fact and making all inferences in his favor, Plaintiff has clearly alleged some specific business relationships that were harmed by the Knight Sky Defendants' tortious conduct.[3]

## IV. *Conclusion*

The Court construes the Government's opposition in part as a motion to strike material from Plaintiff's amended complaint, and will deny that motion without prejudice. The Court also construes the Government's opposition in part as a motion to vacate in part the Court's March 20 Order, and the Court will grant that motion, vacate its earlier order that the

---

[3] The Court will reiterate that the "tortious conduct" at issue is the 2014 Addendum, not the posting of the 2010 Incident Report. Plaintiff proposes to allege that "Mr. Greenlee understood that such information on his JPAS record–*specifically information that he misused government computers*–would be an automatic bar for consideration of contracts involving cybersecurity." (Proposed Am. Compl. ¶ 41 (emphasis added).) The 2014 Addendum, however, does not include information that Plaintiff misused government computers; only the 2010 Incident Report does and Plaintiff's claim based on harm suffered because of the 2010 Incident Report has expired. The Court, however, sees Plaintiff's current claim as this: the Knight Sky Defendants intentionally posted the (irrelevant) 2014 Addendum in order to keep the red flag on Plaintiff's JPAS account (*see* Proposed Am. Compl. ¶ 37), and the harm from this action was that Plaintiff lost out on productive relationships with Mr. Greenlee and Mr. Tunson. So, to be clear, Plaintiff's claim may involve the substance of the 2010 Incident Report, in that it first caused a red flag to appear on his JPAS account and affected his security credentials, but he cannot recover for damages caused by the 2010 Incident Report, *e.g.*, losing his job at Northrop Grumman, or losing his five-year contract with iWatch. (*See* Proposed Am. Compl. ¶¶ 31-32).

Government must answer Plaintiff's proposed amended complaint, and, by accompanying order, order the Government to respond to Plaintiff's proposed amended complaint in the time provided by Federal Rule of Civil Procedure 12(a)(4). Plaintiff has included new, non-futile allegations in his proposed amended complaint, and Plaintiff has not sought to amend his complaint in bad faith or in a manner that is prejudicial to the Knight Sky Defendants. Accordingly, the Court will grant Plaintiff's motion for leave to file an amended complaint by accompanying order, and will order the Clerk to docket the Plaintiff's proposed first amended complaint as the Plaintiff's First Amended Complaint.

DATED this 15th day of May, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge